Argued and submitted April 26, reversed and remanded with directions to enter judgment of conviction for attempted kidnapping II only; to resentence defendant and to conduct a new dangerous offender hearing December 6, 1989, reconsideration denied February 23, petition for review allowed March 27, 1990 (309 Or 521)
See later issue Oregon Reports

# STATE OF OREGON,
*Respondent,*

*v.*

# ROGER MATTHEW WALTERS,
*Appellant.*

## (CM 87-0328; CA A47119)

783 P2d 531

David E. Groom, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his convictions, after a jury trial, for attempted rape in the first degree, ORS 163.375, attempted sodomy in the first degree, ORS 163.405, and attempted kidnapping in the first degree. ORS 163.235; ORS 161.405.

On August 1, 1987, the victim, age 13, was helping her parents conduct a garage sale at their home. In the afternoon, she rode her bike down the street to another garage sale. Defendant approached her and asked if she had seen his lost dog. He described it as a white German Shepherd with a black chest and said that it was worth a lot of money. He asked the victim to show him the area and help him search for the dog. When she refused, he offered her $10. When she again refused, he offered her $20 and then $30, but she continued to refuse. Defendant said that he would go with her to ask her parents' permission. She refused defendant's offer to give her a ride to her home in his truck, and she returned home on her bike.

Defendant followed the victim back to her house. She told her mother what had happened. The mother called the police. Meanwhile, defendant was looking at items for sale. He asked the mother about one and then, in a totally different tone of voice, said that he had a girlfriend. He then asked about other items and, again in a different tone of voice, asked if she had a daughter. He paid for a bowling ball and some place mats and stated, out of context, that he had lost a dog. He did not ask for help in finding the dog.

An officer arrived. Defendant admitted offering the victim $10 to get in his truck. He told the officer that he had just been released from the penitentiary in March. The officer learned that defendant had been convicted as a sex offender and, when she confronted him with that, he said, "My intentions were to have her get in my car and help me find my dog." She asked if he was sexually attracted to the victim and, after a pause, he replied, "I could have found myself in an uncomfortable position today and didn't mean to." He denied having sexual problems with juveniles. Later in the conversation, he stated that the victim was "13 going on 24" and that he "thought she was a lot older than 13." He said that he did not intend to hurt her and was sorry that he had scared her. He asked the officer to apologize to the victim and her parents on his behalf. Defendant did not own a dog.

■     In 1981, defendant had been convicted, after pleading guilty, of rape of a 13-year-old girl. He first assigns as error that the court denied his pretrial motion to exclude evidence of the details of that crime. In its case-in-chief, the state presented the details, including testimony from that victim. In 1981, defendant had approached the 13-year-old girl and asked her to get in his car to help him find his lost German Shepherd dog. When the victim refused, defendant offered her money and, when she continued to refuse, he forced her into his car and took her to his trailer, where he raped and sodomized her. Defendant did not own a dog.

■     The state argues that it offered the details of the 1981 crime to prove defendant's intent in the present incident, not to prove his identity through a "signature crime." *See State v. Johns,* 301 Or 535, 551, 725 P2d 312 (1986);[1] *State v. Bernson,* 93 Or App 115, 119, 760 P2d 1362, *rev den* 307 Or 246 (1988). Attempted kidnapping, rape and sodomy require proof of intent, and defendant's 1981 crime required proof of intent; in each incident, the victims were of similar age, degree of maturity and vulnerability and, therefore, were in the same class; in each incident, defendant's efforts to entice the victim were substantially similar; and in each incident the physical elements were similar. The court found that the state's need for the evidence was great and that the probative value of details of the 1981 crime on the issue of intent was not outweighed by their inflammatory effect, which the court could reduce with a limiting instruction.[2] The court did not err when it admitted

---

[1] In *State v. Johns, supra,* 301 Or at 555, the court set out the considerations to determine whether a trial court should admit evidence of other crimes, acts or wrongs under OEC 404(3) to show a defendant's intent. The pertinent questions are:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

[2] The court concluded that the prior crime was not too old to be relevant. Defendant had been incarcerated for most of the time since 1981.

in evidence the details of the 1981 crime.[3]

Defendant next assigns as error that the court denied his motion for judgment of acquittal. He argues that the evidence, including the details of the 1981 crime, was insufficient to permit the jury to find that he intended to kidnap the victim or to rape or sodomize her. The state refers to *State v. Morgan,* 80 Or App 747, 724 P2d 334, *rev den* 302 Or 461 (1986), where the defendant was convicted of attempted kidnapping in the first degree. He had approached the victim when she was entering her car in a mall parking lot and had displayed a hunting knife. At trial, the court admitted evidence that defendant had been convicted previously of rape and the details of that crime. He had approached a woman in a mall parking lot, threatened her with a gun, taken her to an isolated place and forced her to perform an oral sex act. In holding that the court did not err when it admitted details of the prior crime, we also stated that the evidence was probative of the defendant's intent because of the similarity of the incidents and, therefore, the jury could infer that he intended to drive the victim to another location and to sexually assault her. 80 Or App at 751.[4]

In *Morgan,* however, the issue was the admissibility of the evidence of the prior crime, not the sufficiency of the evidence. Moreover, the defendant there had used a weapon to threaten the victim in both incidents. That behavior, in addition to the details of the prior crime, allowed the trier of fact to

---

[3] In another assignment of error, defendant challenges the court's ruling that his prior convictions were admissible for the purpose of impeachment. He contends that OEC 403 and the Oregon and United States Constitutions require that the court weigh the probative value of those convictions against their prejudicial effect. *See* OEC 609; *see also State v. King,* 307 Or 332, 768 P2d 391 (1989). His assignment is without merit.

[4] In *Morgan,* the court stated:

"Defendant's intent as to what he planned to do with the victim if she moved over and let him in the car was in issue in this case. In order to prove the attempted kidnapping charge, the state had to show, *inter alia,* that he intended to take the victim from one place to another, without her consent and with the purpose of causing her physical injury. *We think that evidence of defendant's prior crime is probative of his intent in this case, because the circumstances of the two assaults are so similar.* In both cases, defendant approached a woman who was alone in a vehicle in a mall parking lot in the evening, brandished a weapon and told the victim to move over. *Because the circumstances of the two acts are similar, a jury could reasonably infer that, in this case, defendant intended to drive the victim to another location and sexually assault her.*" 80 Or App at 751. (Emphasis supplied.)

infer that the defendant had intended to injure the current victim physically—one of the elements of kidnapping in the first degree. ORS 163.235(1)(c).

■ Here, however, the evidence was insufficient to show that defendant intended to act as he had in 1981. It is true that, from defendant's persistent efforts, in spite of the victim's refusal, to entice her into his truck to look for a nonexistent dog, the jury could conclude that defendant intended to interfere substantially with her liberty and to take her from one place to another. *See* ORS 163.225; ORS 163.235. The jury could also conclude from defendant's behavior and remarks to the victim's mother and the police officer that he was sexually attracted to the victim. There is nothing in the record, however, to permit the jury to infer that defendant intended to injure the victim physically or to rape or sodomize her. It was error not to grant defendant's motion for judgment of acquittal on the charges of attempted kidnapping in the first degree, attempted rape in the first degree and attempted sodomy in the first degree.

■ The court also instructed the jury on the lesser included offenses of attempted kidnapping in the second degree and attempted sexual abuse in the second degree.[5] To prove attempted kidnapping in the second degree, the state must prove all the elements of attempted kidnapping in the first degree, except, insofar as pertinent here, that the purpose of the kidnapping was to injure the victim physically. ORS 163.225. In concluding that defendant committed attempted kidnapping in the first degree, the jury necessarily determined that defendant had committed the elements of attempted kidnapping in the second degree. ORS 163.225. There was sufficient evidence from which the jury could reasonably conclude that defendant intended to interfere substantially with the victim's liberty and to take her from one place to another.

As to the offense of attempted sexual abuse in the second degree, the evidence was not sufficient to permit the jury to find, beyond a reasonable doubt, that defendant

---

[5] The court also instructed the jury on attempted sexual abuse in the *first* degree as a lesser included offense. ORS 163.425. There was insufficient evidence for the jury to find that defendant intended to use forcible compulsion against the victim.

intended to have sexual contact with the victim. *See* ORS 163.415.

Defendant also argues that there was not sufficient evidence from which the jury could find that he took substantial steps toward the commission of the crimes charged, ORS 161.405(1),[6] because he did not touch the victim or use sexually suggestive language. The issue is whether the jury could find from the evidence, including defendant's acts in trying to get the victim to go with him and following her home, that he took substantial steps toward commission of the crime of second degree kidnapping. We conclude that it could. Accordingly, the court should enter a conviction of attempted kidnapping in the second degree. Or Const, Art. VII (amended) § 3; *State v. Cannon,* 65 Or App 327, 671 P2d 761 (1983).

■   Defendant assigns as error that the court found that he is a dangerous offender and imposed a sentence accordingly. A court may sentence a defendant as a dangerous offender for a felony that "seriously endanger[s] the life or safety of another." ORS 161.725(2). The jury found that defendant's conduct had seriously endangered the victim's safety. That finding, however, rested on its determination that defendant was guilty of attempted kidnapping I, attempted rape I and attempted sodomy I. Attempted kidnapping II, nonetheless, is a Class C felony, on which a dangerous offender finding also may partly rest. ORS 161.405; ORS 161.725(2). We vacate the dangerous offender sentence and remand for resentencing, including another penalty phase hearing.

■■   Because the issue may arise on remand, we note that defendant's argument that the court's instructions to the jury during the penalty phase were erroneous is without merit. He asserts that the court erred when it instructed the jury that it could find that defendant's conduct seriously endangered the *safety* of the victim but did not instruct the jury that it could find that defendant's conduct endangered the victim's "*life* or

[6] ORS 161.405(1) provides:

"A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

safety." (Emphasis supplied.) ORS 161.725(2) is worded in the disjunctive.[7]

Reversed and remanded with directions to enter judgment of conviction for attempted kidnapping II only; to resentence defendant; and to conduct a new dangerous offender hearing.

---

[7] Defendant also argues that the court should have instructed the jury on the definition of "endangered." The word is adequately defined in the statute. *See* ORS 161.725.