Argued and submitted April 10, affirmed June 26, reconsideration denied August 14, petition for review denied September 24, 1991 (312 Or 151)

# STATE OF OREGON,
*Respondent,*

*v.*

# WILLIAM F. HALL,
*Appellant.*

(CM 89-0306, 89-0307, 89-0308;
CA A63904 (Control), A63905, A63906)
(Cases Consolidated)

814 P2d 172

David B. Kuhns, Salem, argued the cause for appellant. With him on the brief was Todd & Kuhns, Salem.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

**WARREN, P. J.**

Defendant appeals his convictions on two counts of rape, ORS 163.375, one count of sodomy, ORS 163.405, and two counts of sexual abuse, ORS 163.425, arising out of sexual molestation of his two granddaughters, both of whom were under the age of 12 at the time of the acts. The cases were consolidated for trial and appeal. In one of the cases, defendant assigns error to the trial court's striking the allegation of forcible compulsion from the indictment and its denial of his motion for acquittal. In both cases he assigns error to the denial of his motion *in limine* to exclude evidence that he was sexually involved with his daughter, the victims' mother. We affirm.

Only one of the rape indictments charged defendant with engaging in sexual intercourse with a female under the age of 12 by forcible compulsion. ORS 163.375. That indictment charged defendant with two crimes not separately stated, because one can commit first degree rape either by use of force or by having sexual intercourse with a female under the age of 12. ORS 163.375; ORS 161.062(1); *State v. Crotsley,* 308 Or 272, 779 P2d 600 (1989). On the second day of trial, the state moved to strike the allegation of forcible compulsion, because it did not intend to prove it. The trial court deferred ruling. After the state had presented its case, defendant moved for a judgment of acquittal. The court then struck the allegation of force and denied the motion.

When an accusatory instrument "charges more than one offense not separately stated," a defendant may demur. ORS 135.630(3); ORS 135.640; ORS 135.670. Generally, the objection is waived if the defendant does not demur. *State v. Hopkins,* 227 Or 395, 397, 362 P2d 378 (1961). Defendant did not demur before entering his plea, so he waived any argument based on the defect in the indictment. Because defendant had waived his objection, it would not have been error to leave the surplusage in the indictment; he could not have been harmed by its deletion. Early in the trial, he was put on notice that the state did not intend to prove the allegation of forcible compulsion. Under the circumstances, it was not error to strike the allegation.

The motion for judgment of acquittal challenged the legal sufficiency of the evidence. ORS 136.445. It was properly denied, because there was sufficient evidence that defendant had engaged in sexual intercourse with a female under the age of 12.

■　　　In both cases, defendant objected on the basis of OEC 403 and OEC 404 to the admission of evidence of his incestuous relationship with his daughter. At the pretrial hearing, he argued:

> "Your honor, the nature of the – of the relationship between these parties, that being father/daughter and also effectively husband and wife is such an inflammatory one, in our society, that I believe it would cause great prejudice against the defendant."

Defendant never specified how he thought the evidence should be sanitized; that is, whether the evidence that should be excluded was that he and his daughter lived as "husband and wife" or that they were father and daughter, or both. The trial court, after receiving a short summation of the evidence that would be presented, said:

> "Well, a – I think that in order for the jury to fairly assess the credibility of the – of the witnesses in this case and to assess what occurred between the – the two victims and the defendant, they need to have a full understanding of the relationship and family dynamics that were occurring at that time which includes the relationship between their – their mother and the defendant.
>
> "This is – is necessary to explain the delay in – in reporting and the reason for the – the reporting made at the time it took place.
>
> "It's not fair to the defendant to be convicted of evidence that is not – does not pertain to the case that is [sic] charged with, however, a defendant cannot be involved in a number of criminal activities and expect that by committing a number of – of criminal acts, to have the – require the State to present its case in a straight jacket that does not and would not make sense to the trier of fact as the evidence is being brought out.
>
> "This relationship and the way that it ended, I suppose from the defendant's standpoint could be a motive for the children to be falsifying their allegations against him, but I am satisfied that – that in order to explain how and under

what circumstances the abuse is alleged to have occurred, that it's necessary to explain the relationship between the girls' mother and the defendant and I will allow the – the evidence."

At trial, the state presented evidence that defendant, his daughter Debra and her two daughters, the victims, had lived together as a family for two and a half years. Defendant and Debra's mother had divorced when Debra was a baby, and defendant did not see Debra again until she was 14 or 15. Debra testified that they met again when she was an adult and that he then raped her. Soon after, they began living together with her children. Their relationship was frequently violent. The children observed the violence. Debra was too frightened to leave the relationship.

Defendant had asked the children to call him "dad," but they also called him "grandfather," depending on who was within earshot. On several occasions, they saw defendant and their mother having sexual intercourse. One of those times, they got upset, and Debra reassured them that he was not hurting her. The girls were seven and eight when defendant molested them in May, 1987. They did not tell anyone until April, 1988, after Debra and defendant had separated, when the older confided in her teacher.

Defendant testified that Debra's mother had told him that he was not Debra's father, but he acknowledged that he had thought of her as his daughter when he began having sexual relations with her. After he and Debra separated, she moved in with another man. Defendant's theory was that Debra and her new boyfriend created the accusations so that she could keep defendant's personal property.

We need not decide whether all of the evidence was properly admitted, because defendant assigns error only to the denial of his extremely broad pretrial motion. *See State v. Lee*, 88 Or App 556, 561 n 3, 746 P2d 242 (1987). Such motions are disfavored.

"Generally, a trial court's decision whether to admit evidence under OEC 404(3) is a matter of discretion. A trial court must exercise its judgment whether the probative value of the evidence outweighs its prejudicial effects, and its ability to engage in that weighing process depends on the information available and relevant to that process. A pre-

trial ruling on the admissibility of evidence is necessarily more difficult for the trial court, because it lacks a full context on which to base its decision. Although the parties often make elaborate offers of proof, sometimes to the point of essentially presenting their whole case, that remains, in many cases, an awkward and inefficient way to create a context to enable a trial judge to rule on the matter. In most cases, only proffered evidence which carries an *unusual* potential for prejudice should be ruled on before trial." *State v. Browder,* 69 Or App 564, 567, 687 P2d 168, *rev den* 298 Or 172 (1984). (Citations omitted; emphasis in original.)

The evidence of defendant's relationship with his daughter was relevant for a permissible purpose. *See* OEC 404(3); *see also State v. Johns,* 301 Or 535, 549, 725 P2d 312 (1986). The primary issue was the children's credibility. Sanitizing the evidence could have unfairly undermined their credibility by painting an artificial picture of events. *See State v. Harmon,* 77 Or App 705, 714 P2d 271, *rev den* 301 Or 240, *cert den* 479 US 867 (1986). A victim's relationship to the accused is relevant to explain her conduct. One may react differently to the conduct of a stranger than to that of a friend or relative, and what seems natural in one context may seem absurd in another. In cases involving sexual crimes against children, the relationship is frequently important in explaining the child's delay in reporting the abuse. *See State v. Zybach,* 308 Or 96, 775 P2d 318 (1989).

Defendant was not only the children's grandfather; he also played the role of a stepfather, because of his relationship with his daughter.[1] *Compare State v. Mason,* 100 Or App 240, 785 P2d 378 (1990). The children were aware of that dual relationship, and they sometimes called him "grandfather" and sometimes "dad." They observed their mother and defendant having sexual intercourse several times, and once their mother reassured them that he was not hurting her. They also observed defendant physically abuse their mother. That evidence helps explain why the children did not turn to their mother for help and did not report the crime

---

[1] Defendant argues that the evidence was particularly prejudicial, because Debra may not be his daughter. Defendant does not contend that he was prevented from putting on evidence that she was not his daughter. Even if defendant and Debra are not related, the evidence was still probative, because the children, Debra and even defendant thought that they were related.

until after defendant and their mother had separated. The trial court considered the danger of unfair prejudice from the evidence and found that it did not substantially outweigh the probative value. *See* OEC 403; *State v. Johns, supra,* 301 Or at 550. It did not abuse its discretion.

Defendant argues that delay in reporting was not an issue. Defendant's theory was that the mother and her boyfriend concocted the charges so that they could keep defendant's property. The children's delay in reporting the crimes until their mother moved in with her new boyfriend provided a factual basis for that theory. The state was entitled to prove another explanation for the delay.[2]

Defendant's remaining assignments of error do not require discussion.

Affirmed.

---

[2] Defendant also argues that the court should have given a limiting instruction. Because he cites no place in the record where he asked that one be given, we do not consider that argument. *State v. Garcia,* 104 Or App 453, 801 P2d 894 (1990), *rev den* 311 Or 150 (1991).